IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DARIN DEMETRIUS GREENE,

    Plaintiff,                        No. CIV S-04-0917 MCE DAD

    vs.

LT. PEGGY ROURK,                   <u>ORDER AND</u>

    Defendant.                  <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

       Plaintiff is a former maximum security inmate at the Claybank Facility of the Solano County Jail. He claims violation of his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA), the First, Eighth, and Fourteenth Amendments, and California Penal Code § 4027. The sole defendant in this action is Lieutenant Peggy Rourk, the Commander at the Claybank Facility.[1] On May 22, 2009, the court held a hearing on defendant's motion for summary judgment (Doc. No. 94) and plaintiff's motion to compel deposition of defendant Rourk (Doc. No. 106). Fred Norton of Boies, Schiller & Flexner appeared on behalf of plaintiff, and Martha Stringer of Williams & Associates appeared on behalf of defendant.

---

[1] Although defendant Rourk has previously been identified as the Solano County Sheriff, the parties agree that she is the Commander of the Solano County Jail's Claybank Facility. <u>See</u> Pl.'s Statement of Uncontroverted Material Facts, ¶ 54 at 17. (Doc. No. 101.)

1

**BACKGROUND**

This action is proceeding on plaintiff's amended complaint, filed on May 26, 2004.[2] In his amended complaint plaintiff named defendant Rourk as the sole defendant.[3] Plaintiff alleges as follows. He was housed in the maximum security module of the Claybank Facility for approximately three months, from June 30, 2003 to October 9, 2003.[4] He was not allowed to attend religious services because such services were offered to only minimum and medium security inmates.[5] According to plaintiff, he and other inmates attempted to hold Bible studies and morning prayer by "yelling thru the corner edge of the cell door" and in the maximum security module during "unlocks." (Am. Compl. Suppl.) However, these attempts were halted after a few days because of complaints from other inmates who were not interested in these religious activities and because the activities disturbed inmates who were watching television. Subsequently, plaintiff submitted a grievance regarding the lack of religious services which was signed by forty-two other inmates. In response to the grievance, defendant Rourk stated that she was unaware that maximum security inmates wanted to have religious services

---

[2] Defendant asks the court to take judicial notice of the amended complaint filed on May 27, 2004 (Doc. No. 6). However, the operative pleading is the amended complaint filed on May 26, 2004 (Doc. No. 5). Although these two amended complaints are identical, the court noted in its August 18, 2004, order that the amended complaint filed May 26, 2004, would be the operative pleading and that the duplicative amended complaint filed May 27, 2004, would be disregarded. See Order filed Aug. 18, 2004 at 1, n.1. Moreover, it is unnecessary for the court to take judicial notice of documents that have been filed with the court in this action. Therefore, the defendant's request for judicial notice will be denied.

[3] Defendant Rourk contends that she is being sued only in her official capacity. (P&A at 7 n.1.) Plaintiff asserts that he seeks damages against defendant Rourk in both her individual and official capacity. (Opp'n at 21 n.11.) This issue may be addressed by the parties in a subsequent motion for summary judgment if appropriate.

[4] See Greene v. Solano County Jail, 513 F.3d 982, 985 (9th Cir. 2008).

[5] In her motion for summary judgment, defendant Rourk contends that plaintiff seeks to bring this suit as a class action "on his own behalf and on behalf of 42 individuals who were incarcerated in the maximum security level of the Solano County Jail (Claybank Facility) while he was there." (MSJ at 7.) However, this action has never been certified as a class action and is not proceeding as a class action suit.

1  and that a religious visit would be provided.  When this was not done, plaintiff filed a second
2  grievance.  Defendant Rourk denied the grievance, telling plaintiff "to focus your energy to being
3  re-classified to minimum where religious programs ARE provided." (<u>Id.</u>)  Plaintiff claims "the
4  discriminating treatment and denial of access to free assembly for religious services and
5  practices, was cruel and unusual punishment, which is in violation of mine and others
6  constitutional rights covered in the 1st, 8th, and 14th amendments." (<u>Id.</u>)  In terms of relief,
7  plaintiff seeks the following:

> End Solano Counties discriminitory [sic], prejudicial and unconstitutional practice of denying inmates "equally" to religious services, Bible study.  Monitor there [sic] policies to ensure equal and fair treatment to all individuals in there [sic] custody.  Award twenty million dollars to me for pain and suffering, for the cruel and unusual punishment, and for the mental anguish and distress.  Portions of the twenty million dollars will be given to the (42) forty two individuals listed on the back of the original greivance [sic] with my being responsible for doing so after and if any monies are awarded to me.  Force a public apology.

(Compl. at 8.) [6]

This is the second motion for summary judgment filed on behalf of defendant Rourk in this action.  The first motion, filed on September 27, 2005, was granted on September 18, 2006, and the action was dismissed.  On appeal, the Ninth Circuit Court of Appeals determined that under RLUIPA, the religious exercise placed at issue by plaintiff's amended complaint was group worship services, and that "the Claybank jail's policy of prohibiting Greene, a maximum security prisoner, from attending group religious worship services substantially burdened his ability to exercise his religion." <u>Greene v. Solano County Jail</u>, 513 F.3d 982, 988 (9th Cir. 2008).  While recognizing that maintaining prison security is a compelling governmental interest, the Ninth Circuit concluded that there were disputed material facts as to whether precluding group religious worship by maximum security prisoners was the

---

[6] The first page of the form amended complaint starts with page 6.

least restrictive means available for maintaining that security.  Id. at 988-89.  In this regard, the court stated:

> Nothing in our opinion should cast doubt on the fact that prison officials may, under certain circumstances, substantially burden a prisoner's ability to engage in religious exercise.  But in light of RLUIPA, no longer can prison officials justify restrictions on religious exercise by simply citing to the need to maintain order and security in a prison.  RLUIPA requires more.  Prison officials must show that they "actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice."  Warsoldier [v. Woodford], 418 F.3d [989,] 999 [(9th Cir. 2005).]  If prison officials meet that standard, the prison regulation passes muster under RLUIPA, regardless of the burden it imposes on religious exercise.

Id. at 989-90.  Accordingly, the Ninth Circuit remanded to this court for further proceedings plaintiff's claims that "group worship also violated his rights under the First, Eight, and Fourteenth Amendments[,]" as well as, under California Penal Code § 4027.  Id. at 990.

### PLAINTIFF'S MOTION TO COMPEL

As noted above, plaintiff seeks to compel the deposition of defendant Lieutenant Peggy Rourk.  Upon due consideration of the parties' arguments presented in their briefs and at oral argument, the court will grant plaintiff's motion to compel and reopen discovery for the limited purpose of allowing the deposition of defendant Rourk to be taken.  In light of this ruling, the court will also reopen law and motion and set new dates for the filing of any dispositive motions.

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Rourk has again moved for summary judgment in her favor on plaintiff's RLUIPA, First Amendment, Eighth Amendment, Equal Protection, and state Penal Code claims.  Defendant also contends that she is entitled to qualified immunity with respect to plaintiff's claim under RLUIPA and seeks summary judgment in her favor in that regard.  Finally, defendant Rourk also seek dismissal of plaintiff's requests for injunctive relief and damages except for nominal damages.

I. <u>Legal Standards</u>

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" <u>Id.</u> Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. <u>See id.</u> at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Id.</u> In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." <u>Id.</u> at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. <u>See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. <u>See</u> Fed. R. Civ. P. 56(e); <u>Matsushita</u>, 475 U.S. at 586 n.11. The opposing party

1 must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome
2 of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
3 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.
4 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could
5 return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,
6 1436 (9th Cir. 1987).

7         In the endeavor to establish the existence of a factual dispute, the opposing party
8 need not establish a material issue of fact conclusively in its favor. It is sufficient that "the
9 claimed factual dispute be shown to require a jury or judge to resolve the parties' differing
10 versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary
11 judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a
12 genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory
13 committee's note on 1963 amendments).

14         In resolving the summary judgment motion, the court examines the pleadings,
15 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
16 any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson,
17 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the
18 court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587.
19 Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to
20 produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen
21 Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.
22 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply
23 show that there is some metaphysical doubt as to the material facts . . . . Where the record taken
24 as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no
25 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).
26 /////

1  On August 18, 2004, the court advised plaintiff of the requirements for opposing a
2  motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. <u>See</u> <u>Rand v. Rowland</u>, 154
3  F.3d 952, 957 (9th Cir. 1998) (en banc); <u>Klingele v. Eikenberry</u>, 849 F.2d 409 (9th Cir. 1988).

II. <u>RLUIPA Claim</u>

   A. <u>Legal Standards</u>

> RLUIPA provides in relevant part, that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability," unless the government establishes that the burden furthers "a compelling governmental interest," and does so by "the least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)-(2). RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000ccc-5(7)(A); <u>Warsoldier v. Woodford</u>, 418 F.3d 989, 994 (9th Cir. 2005).

<u>Greene v. Solano County Jail</u>, 513 F.3d at 986. RLUIPA is distinguishable from traditional First Amendment jurisprudence in at least two ways. <u>Id.</u> First, it expanded the reach of its protection to include any religious exercise, whether or not compelled by or central to the religious belief in question. <u>Id.</u> Second, RLUIPA requires the government to meet a stricter test under which any burden imposed by the government on religious exercise must be both in furtherance of a compelling governmental interest and be the least restrictive means of furthering the governmental interest at issue. <u>Id.</u>

   B. <u>Discussion</u>

Defendant Rourk argues that she is entitled to summary judgment in her favor as to plaintiff's RLUIPA claim because there was no substantial burden placed on plaintiff's religious exercise. The court is unpersuaded by the argument. Defendant asserts that plaintiff was able to worship and conduct Bible study with his cellmate, as well as, with other maximum security inmates in the dayroom or corridor of the maximum security module. However, as the Ninth Circuit has already concluded in this case, "the Claybank jail's policy of prohibiting Greene, a maximum security prisoner, from attending group religious worship services

1  substantially burdened his ability to exercise his religion." Greene, 513 F.3d at 988.  To the
2  extent defendant Rourk now argues that plaintiff was able to conduct group worship in the
3  maximum security module, there are clearly disputed issues of material facts as to whether the
4  corridors and dayroom were suitable areas within the jail for group religious worship.
5      There also exist disputed issues of material facts as to whether prohibiting
6  plaintiff from attending group worship with the minimum and medium security inmates was the
7  least restrictive means of furthering the governmental interest in preserving institutional security.
8  In this regard, plaintiff's criminal justice expert, Walter Kautzky has declared that "sensible
9  scheduling and use of alternate spaces in the jail provide numerous reasonable alternatives to a
10 ban on group worship." (Kautzky Decl. (Doc. No. 105) ¶ 25 at 9.)  In response to defendant's
11 contention that the classroom space at the jail is unsuitable for this purpose because of the lack of
12 a security camera in that area, Mr. Kautzky opines that adding a single security camera to a
13 classroom would not be "prohibitively expensive." (Id. ¶ 27 at 10.)
14     Because there exist disputed issues of material fact central to resolution of
15 plaintiff's RLUIPA claim, defendant Rourk's motion for summary judgment with respect to that
16 claim should be denied.

III. First Amendment Claim

    A. Legal Standard

19     The United States Supreme Court has held that "when a prison regulation
20 impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to
21 legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987).  There are several
22 factors in determining the reasonableness of the regulation:  (1) whether there is a valid, rational
23 connection between the prison regulation and the governmental interest, (2) whether there are
24 alternative means for the inmate to exercise the right, (3) whether the impact of accommodating
25 the asserted constitutional right will have an adverse impact on the guards or other inmates, (4)
26 whether there are other ready alternatives.  Id. at 89-91.

B. Discussion

The court finds that there are also disputed issues of material fact as to each element of plaintiff's First Amendment claim. Plaintiff has come forward with evidence, in the form of declarations by himself and his criminal justice expert, challenging defendants' assertion that because of safety concerns, maximum security inmates cannot attend group religious worship services with minimum and medium security inmates. Plaintiff also persuasively argues that being allowed to meet with a chaplain or to have religious discussions with his cellmate are clearly inadequate alternatives to group religious worship. As to the impact of the accommodation, plaintiff has provided the court with the opinion of his criminal justice expert that by using proper scheduling and alternate spaces in the jail, group worship for maximum security inmates could be provided without an adverse impact on guards and inmates in terms of institutional security. Finally, plaintiff's expert states that there are obvious and ready alternatives to the ban on group religious worship, such as, using the jail classroom space and screening inmates. The evidence of the party opposing summary judgment is to be believed. Therefore, in lights of the disputed issues of material fact raised by plaintiff, defendant's motion for summary judgment with respect to plaintiff's First Amendment claim should also be denied.

IV. California Penal Code § 4027 Claim

California Penal Code § 4027 provides in its entirety as follows:

> It is the intention of the Legislature that all prisoners confined in local detention facilities shall be afforded reasonable opportunities to exercise religious freedom.
>
> As used in this section "local detention facility" means any city, county, or regional facility used for the confinement of prisoners for more than 24 hours.

A. Parties' Arguments

Defendant relies on this court's decision in <u>Wade v. County of Sacramento</u>, No. CIV S-04-1711 GEB DAD P, 2008 WL 4104312 (E.D. Cal. Sept. 3, 2008), in arguing that California Penal Code § 4027 merely expresses the California Legislature's intent but does not

provide for a tort action against either a public entity or a public employee. (P&A at 23.) On this basis defendant Rourk seeks summary judgment in her favor as to this state law claim brought by plaintiff.

Plaintiff opposes this aspect of defendant's pending motion for summary judgment, arguing that under the California Supreme Court's decision in In re Arias, 42 Cal. 3d 667, 683-87 (1986), California Penal Code § 4027 creates a specific duty of care and imposes liability on public entities where a plaintiff can show that "he was denied a 'reasonable' opportunity to engage in group worship." (Opp'n at 19-20.)

B. Analysis

In light of the disputed issues of material fact noted above, defendant Rourk is not entitled to summary judgment in her favor on this state law claim. In re Arias involved a habeas action brought by wards of the California Youth Authority (CYA) relying upon California Welfare and Institutions Code § 1705 in challenging the CYA's installation of an electronic monitoring system in the facility's chapel.[7] In that case, the California Supreme Court noted that § 1705 and Penal Code § 4027 express the Legislature's intent that persons in the custody of the CYA or a local detention facility be afforded reasonable opportunities to exercise religious freedom. 42 Cal. 3d at 683. The California Supreme Court also concluded that the standard applied under Penal Code § 2600, should apply to such claims. Id. at 687. Following the decision in Arias, § 2600 was amended by the Legislature. The California Supreme Court concluded that the Legislature's 1994 amendment abrogated the three-part test applicable to such claims recognized in In re Arias, in favor of the standard established by the United States

/////

---

[7] California Welfare and Institutions Code § 1705 is a parallel statute to California Penal Code § 4027 and provides: "It is the intention of the Legislature that all persons in the custody of an institution under the supervision of the Department of the Youth Authority shall be afforded reasonable opportunities to exercise religious freedom." Both statutes were enacted in December of 1972.

Supreme Court in Turner v. Safley.  Thompson v. Dep't of Corrections, 25 Cal. 4th 117, 130 (2001).

Based on these state law decisions, plaintiff may proceed with his state claim pursuant to California Penal Code § 4027, however the claim is governed by the standard set forth in Turner v. Safley.[8]  Accordingly, defendant's motion for summary judgment should be denied with respect to this state law claim.

V. Cruel and Unusual Punishment Eighth and Fourteenth Amendment

As indicated above, plaintiff has claimed a violation of the Eighth Amendment for the cruel and unusual punishment that resulted from the ban imposed by defendant on group religious worship for maximum security inmates.  Citing the decision in Bell v. Wolfish, 441 U.S. 520 (1979), defendant argues that it is the Fourteenth Amendment and not the Eighth Amendment that applies to plaintiff's claim because plaintiff is a pretrial detainee.  The court agrees.

As to plaintiff's claim that he was subjected to cruel and unusual punishment in violation of the Fourteenth Amendment, defendant asserts that if a prison regulation is reasonably related to a legitimate governmental purpose, it does not amount to punishment.  In this regard, defendant Rourk argues that the restriction on group religious worship for maximum security inmates is reasonably related to the legitimate goal of jail security.

Above, in addressing plaintiff's First Amendment claim, the court has concluded that there are disputed issues of material fact as to the reasonableness of the defendant's ban on group religious worship as it relates to jail security.  For those same reasons, summary judgment

---

[8] The fact that the standard applicable to such a state law claim is the same as announced by the United States Supreme Court in Turner v. Safley as opposed to the stricter RLUIPA standard, may explain why the court has been unable to find a single case granting relief pursuant to California Welfare and Institutions Code §1705 or California Penal Code § 4027 following the Thompson decision.  Nonetheless, to the extent the undersigned suggested in Wade v. County of Sacramento, No. CIV S-04-1711 GEB DAD P, 2008 WL 4104312 (E.D. Cal. Sept. 3, 2008), that no state law claim could be stated under those provisions, the court did so in error.

is precluded as to plaintiff's cruel and unusual punishment claim based on the same ban on group religious worship.

Accordingly, defendant's motion for summary judgment should be granted as to any Eighth Amendment claim due to plaintiff's status as a pretrial detainee but denied as to plaintiff's cruel and unusual punishment claim brought under the Fourteenth Amendment.

VI. Fourteenth Amendment Equal Protection Claim

Defendant Rourk moves for summary judgment in her favor on this claim, arguing that there was a rational basis for treating maximum security inmates differently from minimum and medium security inmates with respect to group religious worship. In his opposition to the pending motion plaintiff states only that he "does not contest the motion on the . . . Equal Protection Clause claim[], except to the extent that summary judgment is not proper under Fed. R. Civ. P. 56(f)." (Opp'n at 1 n.1.) At the hearing on the motion, however, plaintiff's counsel argued that it is disputed as to whether plaintiff was properly classified as a maximum security inmate.

The court concludes that defendant has not made a satisfactory showing that she is entitled to judgment as a matter of law as to this claim. Accordingly, defendant's motion for summary judgment as to plaintiff's equal protection claim should be denied.

VII. Other Issues Raised by Defendant's Motion

    A. Injunctive and Declaratory Relief

Defendant Rourk also argues that because plaintiff has been transferred out of the Solano County Jail system to state prison, his request for injunctive relief is moot. Plaintiff offers no opposition. Therefore, summary judgment should be granted in favor of defendant as to plaintiff's request for injunctive relief on the basis that the requested relief has been rendered moot by plaintiff's transfer. See Weinstein v. Bradford, 423 U.S. 147, 149 (1975); Dilley v. Gunn, 64 F.3d 1365, 1368-69 (9th Cir. 1995).

/////

1    Defendant Rourk contends that plaintiff has sought only injunctive relief and
2 monetary damages in the amended complaint.  Plaintiff disputes this contention and has
3 submitted a declaration in which he asserts that he is also seeking declaratory judgment "that the
4 Claybank facility's practices and policies concerning group worship for maximum security
5 prisoners violate the United States Constitution, the Religious Land Use and Institutionalized
6 Persons Act, and California state law." (Greene Decl. in Support of Opp'n (Doc. No. 104 ), ¶ 29
7 at 6.)  In her reply, defendant Rourk argues that no request for declaratory judgment appears in
8 the amended complaint and that, in any event, such relief is now moot. (Def.'s Reply at 8 n.8.)
9    It is true that a some contexts a prayer for declaratory judgment with respect to jail
10 practices and policies may be rendered moot by plaintiff's subsequent transfer. See Preiser v.
11 Newkirk, 422 U.S. 395, 401 (1975); DeFunis v. Odegaard, 416 U.S. 312, 316 (1974).  However,
12 here plaintiff's "claim for damages necessarily entails a determination whether [defendant's]
13 alleged conduct violated his rights" and therefore "his separate request for declaratory relief is
14 subsumed by his damages action" which survives his transfer to state prison. Rhodes v.
15 Robinson, 408 F.3d 559, 566 n.8 (9th Cir. 2005).

16    B. Damages

17    Plaintiff seeks monetary damages a follows:  "Award twenty million dollars to me
18 for pain and suffering, for the cruel and unusual punishment, and for the mental anguish and
19 distress." (Am. Compl. at 8.)
20    Defendant argues that under the Prison Litigation Reform Act (PLRA) and §
21 1997e(e), an inmate is not entitled to compensatory damages for mental or emotional injury
22 where there is only de minimis physical injury.  Defendant argues that it is undisputed that
23 plaintiff suffered no physical injury as a result of her actions.  In this regard defendant points out
24 that at his deposition, plaintiff testified as follows:
25    Q (Ms. Stringer).  Did you suffer any type of physical injury at
      Claybank as a result of not being able to go to services?
26

1         Mr. Norton:  Objection to form.  Vague.  Answer, if you understand.

2

3         The Witness (Greene):  You're wanting to know if I got into fights?

4         Q.  By Ms. Stringer:  Any type of physical injury.  I know the complaint indicates mental and emotional distress.

5

6         A.  Yes.

7         Q.  Are there any physical injuries that you suffered at Claybank?

        A.  No.  Not due to - - no.

8

9 (Stringer Decl. in Support of MSJ, Ex. A (Doc. No. 94, Part 11) at 174-75.)  Defendant also

10 notes that plaintiff has not asked for an award of punitive damages.

11         Plaintiff argues that § 1997e(e) does not apply here and that courts have

12 recognized that compensatory damages may be awarded for violations of First Amendment

13 rights.  Plaintiff contends that the same reasoning has been extended to RLUIPA claims.

14 Plaintiff also argues that his complaint should be construed to include a claim for punitive

15 damages.

16         In reply, defendant argues that plaintiff seeks only compensatory damages with

17 respect to his RLUIPA claim and has not asked for punitive damages.  (Reply at 7.)  Defendant

18 asserts that § 1997e(e) was not repealed by RLUIPA and that therefore plaintiff is not entitled to

19 compensatory damages for any pain and suffering, mental anguish or distress that he allegedly

20 suffered.  (Id. at 7- 8 and n.8.)

21         In Canell v. Lightner, 143 F.3d 1210 (9th Cir. 1998), the court rejected the

22 argument that the inmate's § 1983 action was barred because he alleged only mental or emotion

23 injury in connection with his First Amendment claims.  The court reasoned:

24         The deprivation of First Amendment rights entitled a plaintiff to judicial relief wholly aside from any physical injury he can show, or any mental or emotion injury he may have incurred.  Therefore, § 1997e(e) does not apply to First Amendment Claims regardless of the form of relief sought.

25

26

14

143 F.3d at 1213. In Oliver v. Keller, 289 F.3d 623, 630 (9th Cir. 2002), the court held that § 1997e(e) requires a showing of more than *de minimis* physical injury to recover compensatory damages strictly for mental or emotional injury. However, as to the remaining claims of the plaintiff's civil rights action, the court concluded that "[t]o the extent that [the inmate's] claims for compensatory, nominal or punitive damages are premised on alleged Fourteenth Amendment violations, and not on emotional or mental distress suffered as a result of those violations, § 1997e(e) is inapplicable and those claims are not barred." Id.[9]

      Accordingly, to the extent that plaintiff seeks compensatory damages, as well as, nominal and punitive damages for violations of RLUIPA, the First and Fourteenth Amendments, and California Penal Code § 4027, those claims are not barred by 42 U.S.C. § 1997e(e). Canell, 143 F.3d at 1213; Oliver, 289 F.3d at 630; Davis v. Arpaio, No. CV 07-0424-PHX-DGC (MEA), 2008 WL 1840732, *3 (D. Ariz. April 23, 2008) (concluding that § 1997e(e) is not a bar when "[p]laintiff does not bring any claims for mental or emotional injuries; rather, he alleged violations of his constitutional rights and specifically sought damages."). Defendant's motion for summary judgment as to plaintiff's prayer for damages, should therefore be denied.

    C. Qualified Immunity

      Defendant Rourk next asserts that she is entitled to summary judgment with respect to plaintiff's RLUIPA claim based on the doctrine of qualified immunity. She argues that in 2003, there was little Ninth Circuit authority construing RLUIPA. According to defendant

/////

---

[9] This interpretation of the extent to which § 1997e(e) applies has not been followed by the majority of circuit courts. See Thompson v. Carter, 284 F.3d 411, 417 (2nd Cir. 2002) ("We agree with the majority of our sister circuits that Section 1997e(e) applies to claims in which a plaintiff alleges constitutional violations so that the plaintiff cannot recover damages for mental or emotional injury for a constitutional violation in the absence of a showing of actual physical injury); see also Swackhammer v. Goodspeed, No. 4:03-CV-82, 2009 WL 189854 at *2 (W.D. Mich. Jan. 26, 2009) ("The Ninth Circuit stands alone in holding that § 1997e(e) does not apply to First amendment claims."). This court is, of course, bound by the decision of the Ninth Circuit Court of Appeals.

Rourk, it was not until the decision in Warsoldier v. Woodford, 418 F.3d 989 (9th Cir. 2005), that she had any arguable notice that her actions might be found to run afoul of the law.

Plaintiff argues that the right to group religious worship has long been clearly established by the decisions of both the United States Supreme Court and the Ninth Circuit Court of Appeals, in cases such as Turner v. Safley, 482 U.S. 78 (1987), O'Lone v. Estate of Shabazz, 482 U.S. 342 (1987) and Mayweathers v. Newland, 314 F. 3d 1062 (9th Cir. 2002). Plaintiff also argues that the Second, Fourth, Sixth and Seventh Circuit Court of Appeals have rejected qualified immunity defenses in considering whether a right was clearly established under RLUIPA. Plaintiff contends that RLUIPA did not announce a new standard but rather employs the standard that was already set forth in the Religious Freedom Restoration Act (RFRA), which was enacted in 1993, and decisions interpreting the First Amendment.

In her reply, defendant argues that she did not have notice that her actions could be interpreted as violating RLUIPA until 2005, following the decisions in Warsoldier and Cutter v. Wilkinson, 544 U.S. 709 (2005) (holding that Section 3 of RLUIPA, which applies to prisoners, is constitutional). In addition, defendant argues that she is entitled to qualified immunity because it was objectively reasonable to believe that her actions did not violate plaintiff's rights under RLUIPA or the First Amendment.

"Government officials enjoy qualified immunity from civil damages unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). When presented with a qualified immunity defense, the central questions for the court are (1) whether the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the defendants' conduct violated a statutory or constitutional right and (2) whether the right at issue was "clearly established." Saucier v. Katz, 533 U.S. 194, 201 (2001). Although the court was previously required to answer these questions in order, the U.S. Supreme Court has recently held that "while the sequence set forth there is

often appropriate, it should no longer be regarded as mandatory." Pearson v. Callahan, __ U.S. __, 129 S. Ct. 808, 818 (Jan. 21, 2009). In this regard, if a court decides that plaintiff's allegations do not make out a statutory or constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201. Likewise, if a court determines that the right at issue was not clearly established at the time of the defendant's alleged misconduct, the court may end further inquiries concerning qualified immunity at that point without determining whether the allegations in fact make out a statutory or constitutional violation. Pearson, 129 S. Ct. at 818.

In deciding whether the plaintiff's rights were clearly established,"[t]he proper inquiry focuses on whether 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted' . . . or whether the state of the law in [at the relevant time] gave 'fair warning' to the officials that their conduct was unconstitutional." Clement v. Gomez, 298 F.3d 898, 906 (9th Cir. 2002) (quoting Saucier, 533 U.S. at 202). The inquiry must be undertaken in light of the specific context of the case. Saucier, 533 U.S. at 201. Because qualified immunity is an affirmative defense, the burden of proof initially lies with the official asserting the defense. Harlow, 457 U.S. at 812; Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992); Benigni v. City of Hemet, 879 F.2d 473, 479 (9th Cir. 1989).

The court concludes that defendant has not carried her burden of establishing that an inmate's right to group religious worship under RLUIPA was not clearly established in 2003. The fact that the Warsoldier and Cutter cases were decided after 2003 is not determinative. RLUIPA was enacted on September 22, 2000 .

> It is well-established that acts of Congress enjoy a strong presumption of constitutionality and that newly-passed statutes do not require judicial ratification in order to take effect. . . . [O]fficials are . . . not entitled . . . to ignore a new federal law in the hopes that a court will subsequently strike it down. If officials choose to ignore a federal law, they do so at their own peril.

/////

Schwenk v. Hartford, 204 F.3d 1187, 1204 (9th Cir. 2000). In Mayweathers v. Newland, the Ninth Circuit concluded in December of 2002 that RLUIPA was constitutional. 314 F.3d at 1066-71. Moreover, this case does not involve an application of RLUIPA to a prison or jail regulation about which there was significant uncertainty. See Nelson v. Runnels, No. Civ. S-06-1289 LKK DAD P, 2009 WL 211052, *5 (E.D. Cal. Jan. 28, 2009) (defendants entitled to qualified immunity with respect to the CDCR's hair length regulation violating RLUIPA prior to July 2005 when Warsoldier was decided) (and cases cited therein). Rather, the policy in procedure at issue here prohibited group religious worship for jail inmates in a particular classification. Unless there was a legitimate penological purpose for doing so and no less restrictive means of preserving institutional security, the policy clearly would have been in violation of RLUIPA in 2003. See Keen v. Noble, No. CV F 04-5645 AWI WMW P, 2007 WL 2789561, *4 (E.D. Cal. Sept. 20, 2007) (defendants not entitled to qualified immunity for denying prisoners possession of items used in connection with the practice of their religion in 2002). Therefore, the court will recommend that defendant's motion for summary judgment on the RLUIPA claim based on a qualified immunity defense be denied.[10]

## CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's April 14, 2009 motion to compel (Doc. No. 106) is granted;

2. Discovery is reopened for sixty days from the date of service of this order for the sole purpose of deposing defendant Peggy Rourk. By that deadline, any disputes relative to

/////

/////

---

[10] In her reply brief defendant generally asserts that "it would have been objectively reasonable in 2003 for LT. ROURK to believe her actions did not violate MR. GREENE'S statutory or First Amendment rights[.]" (Reply at 9.) However, defendant has not provided any other argument in the pending motion that she is entitled to qualified immunity with respect to plaintiff's First Amendment claim. The court will therefore not address qualified immunity with respect to plaintiff's First Amendment claim.

this further discovery shall have been noticed on the undersigned's regular law and motion calendar[11] in accordance with the Local Rules; and

   3. All law and motion, except motions to compel discovery, shall be conducted so as to be <u>completed</u> by **October 2, 2009**. The word "completed" in this context means that all law and motion matters must be heard by the above date. It is incumbent upon counsel to contact the undersigned's courtroom deputy, Pete Buzo, at (916) 930-4128, sufficiently in advance so as to ascertain the dates upon which law and motion will be heard and to properly notice the motion for hearing on or before the completion date established above. Counsel are cautioned to refer to Local Rule 78-230 regarding the requirements for noticing such motions on the court's regularly scheduled law and motion calendar. Dispositive motions shall be noticed for hearing before the undersigned, to be resolved on findings and recommendations subject to review by the assigned district judge. <u>See</u> 28 U.S.C. § 636(b)(1)(B) and L.R. 72-302(c)(21).

   Also, IT IS HEREBY RECOMMENDED that:

   1. Defendant's February 2, 2009 motion for summary judgment (Doc. No. 94) be granted in part and denied in part as follows:

   a. The motion for summary judgment be granted as to plaintiff's Eighth Amendment claim;

   b. The motion for summary judgment be granted as to plaintiff's request for injunctive relief; and

   c. The motion for summary judgment be denied in all other respects.

   These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written

---

[11] Hearings on the undersigned's motion calendar are conducted on Friday mornings. Parties may appear telephonically by contacting Pete Buzo, courtroom deputy of the undersigned at (916) 930-4128.

objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 19, 2009.

/s/ Dale A. Drozd
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:4
gree0917.msj2